CERTIFIED COPY

In the

# United States Court of Appeals

For the Seventh Circuit

FILED
OCT 0 1 2004
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

No. 03-2389

WASHINGTON GROUP INTERNATIONAL, INC.,

*Plaintiff-Appellant,*

v.

BELL, BOYD & LLOYD LLC,

*Defendant-Appellee.*

---

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 02 C 8974—James B. Zagel, *Judge.*

---

ARGUED OCTOBER 27, 2003—DECIDED SEPTEMBER 9, 2004

---

Before RIPPLE, DIANE P. WOOD, and EVANS, *Circuit Judges.*

DIANE P. WOOD, *Circuit Judge.* While the technical issue before us concerns the relation between this litigation and an earlier bankruptcy proceeding, the underlying dispute alleges that the firm of Bell, Boyd & Lloyd (Bell Boyd) committed legal malpractice in conjunction with a mechanic's lien. Washington Group, the successor to Raytheon Engineers & Constructors, Inc. (Raytheon), claimed that Bell Boyd negligently handled both the drafting of certain liens and the litigation related to those liens. In response, Bell Boyd claimed that all the issues Raytheon was raising in this

case had been resolved against it in an adversary proceeding before the Delaware bankruptcy court in a case between Raytheon and Acme, a client for whom Raytheon was building a plant. The district court agreed with Bell Boyd and dismissed all claims. We affirm.

I

In 1994, Raytheon entered into a contract with Acme Steel Company for the construction of a steel mill. Raytheon in turn signed a subcontract with United Steel Erectors, Inc. (USE) for construction of the buildings at the steel mill. USE enlisted Calumet Construction Corporation (Calumet) for the erection of the structural steel for the steel mill buildings. In 1996, Calumet filed a sub-subcontractor's claim for a mechanic's lien related to its work on the steel mill. It followed up on that action with a lawsuit in February 1997 to enforce its mechanic's lien against Acme, Raytheon, and USE (the Calumet litigation). In March 1997, USE filed its own mechanic's lien and then cross-claimed against Raytheon and Acme seeking to enforce that lien.

Faced with this array of disputes, Raytheon retained Bell Boyd to represent it in the Calumet litigation and to protect its rights vis-à-vis Acme. Over a year later, in September 1998, Acme voluntarily filed in the Delaware bankruptcy court for Chapter 11 relief. Later, on November 13, 1998, Bell Boyd filed a $12,006,799 mechanic's lien (the Acme Lien) on Raytheon's behalf in connection with its work on the steel mill. The property description Bell Boyd used in the Raytheon lien was the same description as the one that had been used in the Calumet and USE liens. Shortly after filing the lien, Bell Boyd withdrew from further representation of Raytheon because of a conflict of interest.

On February 7, 2000, Acme brought an adversary action in its bankruptcy proceeding seeking a declaration that

Raytheon's Acme Lien was invalid because (1) the property description was incorrect; and (2) even if the property description was acceptable, that the Illinois Mechanic's Lien Act, 770 ILCS 60/6, requires completion of work within three years of commencement for a lien to be valid. Raytheon vigorously defended the validity of the property description, ultimately convincing the bankruptcy court that the description was valid. The bankruptcy court determined, as a matter of law, that the property description included in the November 1998 lien was "sufficiently correct to put anyone on notice of [Raytheon's] claims" and "to effect a lien on [Acme's] Plant." *In re Acme Metals, Inc.*, 257 B.R. 714, 720-21 (Bankr. D. Del. 2000). Nonetheless, the bankruptcy court held the lien invalid because Raytheon had not completed the work within three years of commencement. *Id.* at 723. While the case was on appeal, Acme and Raytheon settled both their adversary proceeding and the Calumet litigation. The appeal was dismissed with prejudice on April 22, 2002.

On December 11, 2002, Raytheon's successor, the Washington Group (an Ohio corporation with its principal place of business in Ohio) brought this action under the diversity jurisdiction, alleging that Bell Boyd (an Illinois limited liability company, none of whose members are citizens of Ohio) had committed malpractice. Raytheon claimed that Bell Boyd should have discovered the incorrect property description in the Calumet and USE liens in 1997 and that Bell Boyd prepared Raytheon's 1998 lien negligently because it used that same incorrect property description. Raytheon also claimed that Bell Boyd was negligent in failing to advise Raytheon that the three-year rule might invalidate Raytheon's lien. In addition to damages, Raytheon sought reimbursement of the attorneys' fees it spent litigating the bankruptcy and Calumet cases.

Ruling on Bell Boyd's 12(b)(6) motion, *the district court held that the bankruptcy court's conclusion that the prop-*

4    No. 03-2389

erty description was valid barred Raytheon's claims related to the property description. The district court also held that Bell Boyd was not negligent in failing to advise Raytheon of the three-year rule. Because Raytheon did not retain Bell Boyd until close to the end of the three-year period, Raytheon could not have taken any action based on Bell Boyd's advice that would have prevented the application of the rule to its lien.

Before this court, Raytheon makes two principal arguments: first, that the property description was indeed invalid and that it should not be bound by the bankruptcy court's conclusion on that point; and second, that an Illinois court might have interpreted the three-year rule differently than the bankruptcy court did, and the possibility of such a discrepancy proves Bell Boyd was negligent in not informing Raytheon of the rule's effect. We find it unnecessary to consider the first point in detail, because we conclude that Raytheon was bound by the bankruptcy court's ruling on the three-year rule, and that it is plain on the face of the pleadings that nothing Bell Boyd could have done, given its late entry into the fray, could have made a difference.

II

An action for legal malpractice in Illinois requires the plaintiff to prove five elements: "(1) an attorney-client relationship; (2) a duty arising out of that relationship; (3) a breach of that duty; (4) causation; and (5) actual damages." *Griffin v. Goldenhersh*, 752 N.E.2d 1232, 1238 (Ill. App. 2001). Raytheon's malpractice claims against Bell Boyd thus depended upon, among other things, the possibility of finding that Bell Boyd's negligence with respect to the allegedly flawed mechanic's lien caused some harm to Raytheon. Raytheon believes that if Bell Boyd had discovered that the property description was incorrect earlier or if Bell

No. 03-2389    5

Boyd had alerted Raytheon to the three-year requirement, Raytheon would have prevailed in the Calumet litigation and would never have been dragged into bankruptcy court— or at least not to the degree that it was. Instead, it asserts, Bell Boyd's negligence forced Raytheon to defend itself in the *Calumet* litigation and ultimately to suffer substantial losses.

Raytheon has argued that the bankruptcy court erred in its application of the three-year rule in the Mechanic's Lien Act. Bell Boyd responds that it is too late in the day to challenge that ruling, because it is entitled to preclusive effect in the present case. Because we are considering what effect should be given to the judgment of the Delaware bankruptcy court, which is a unit of the district court, see 28 U.S.C. § 151, we apply the federal common law of issue preclusion. Under that law, a party seeking to invoke preclusion must show four things:

1) the issue sought to be precluded must be the same as that involved in the prior action, 2) the issue must have been actually litigated, 3) the determination of the issue must have been essential to the final judgment, and 4) the party against whom estoppel is invoked must be fully represented in the prior action.

*People Who Care v. Rockford Bd. of Educ.*, 68 F.3d 172, 178 (7th Cir. 1995); *La Preferida, Inc. v. Cerveceria Modelo, S.A.*, 914 F.2d 900, 905-06 (7th Cir. 1990). Raytheon challenges only the first requirement—that the issue sought to be precluded in the present case is not the same as that decided in the bankruptcy court. (When Bell Boyd responded to the motion under Rule 12(b)(6) with a claim of collateral estoppel, Raytheon responded with arguments on the merits of that point. It did not assert that Bell Boyd needed to plead preclusion as an affirmative defense under Fed. R. Civ. P. 8(c), and thus we attach no weight to the procedural shortcut that occurred here. We do, however, construe the facts

6                              No. 03-2389

in the light most favorable to Raytheon, as is normal in reviewing a decision under Rule 12(b)(6).)

In order to resolve this element of issue preclusion, we examine first what was before the bankruptcy court, and then what was before the district court. Raytheon filed two secured proofs of claim in the bankruptcy proceeding, each in the amount of $8,820,252. It asserted that its original mechanic's lien secured these claims. Acme responded that Raytheon's claims actually were unsecured because Raytheon filed the lien improperly. Acme offered three arguments in support of this position, one of which was that the lien was invalid because it failed to meet the three-year requirement of the Illinois Mechanic's Lien Act, 770 ILCS 60/6.

Section 6 of the Illinois Mechanic's Lien Act requires completion of work within three years of commencement in order for a mechanic's lien to be valid. The question whether the Raytheon liens complied with this rule was precisely the issue presented to the bankruptcy court. Indeed, this is the reason why the bankruptcy court ultimately ruled that the lien was invalid. See 257 B.R. at 722. The bankruptcy court pointed out that the parties entered into the contract at issue in July 1994, and the contract specified a guaranteed completion date of June 16, 1997. *Id.* The contract was not in fact completed by that date, nor were either of Raytheon's mechanic's liens filed within four months of the completion date. *Id.* (In fact, as we noted earlier, Bell Boyd did not file the lien until November 13, 1998, well outside the three-year period.)

Raytheon has already had its day in court with respect to the question whether the lien complied with the three-year rule, and it lost. That much is therefore established for purposes of the liens at issue here. The only remaining issue is whether Raytheon has stated a claim against Bell Boyd for negligently failing to counsel it about the effects

No. 03-2389                              7

of the three-year rule. The district court pointed out that Raytheon did not even hire Bell Boyd until more than two years of the contract had passed. Raytheon failed to allege any facts suggesting that construction would be completed by the statutory three-year deadline, or that, had Bell Boyd alerted it to that rule earlier, it could have sped up construction. Because Raytheon could take no action to stave off the effects of the three-year rule even had Bell Boyd told it about the rule, Bell Boyd's failure to do so could not have caused any damage to Raytheon.

III

We cannot improve on the conclusion that the district court succinctly stated: ". . . [A]ll of the elements of collateral estoppel are clearly met here, and there is no showing that the defendant's actions were the proximate cause of any damage to Raytheon. . . ." The same reasons are enough to defeat Raytheon's request for attorneys' fees it paid allegedly because Bell Boyd was negligent. Finally, we deny Raytheon's motion to certify these issues to the Illinois Supreme Court, as we see no issues that meet that court's standards for certification. See Ill. S. Ct. R. 20(a). We AFFIRM the judgment of the district court.

A true Copy:

Teste:

Clerk of the United States Court of
Appeals for the Seventh Circuit

USCA-02-C-0072—9-9-04